REGAN VAPOR-ENGINE Co. *v.* PACIFIC GAS-ENGINE Co. *et al.*

(*Circuit Court, N. D. California.* July 27, 1891.)

1. PATENTS FOR INVENTIONS—LICENSE—ASSIGNMENT—FUTURE IMPROVEMENTS.
   Exhibit F, copied in opinion, construed, and *held* to be not only a license, but an assignment of the improvements of the invention that might thereafter be made, and patents obtained therefor.

2. ASSIGNMENT OF PATENTS—AGREEMENTS RELATING THERETO, HOW CONSTRUED.
   An agreement which recites the fact of the assignments of previous patents as a part of the consideration for its execution, although executed the day after the execution of the assignments, should be construed, with reference to said assignments, as constituting part of the same transaction.

3. ASSIGNMENT OF RIGHT, TITLE, AND INTEREST.
   Where an assignment is made by the patentee for certain specified territory, and a subsequent assignment made of all "his right, title, and interest" in the patents, *held*, that his interest was in and for the states and territories not included in his first assignment.

In Equity.   On exception to master's report.

Bill by the Regan Vapor-Engine Company against the Pacific Gas-Engine Company and others for infringement of a patent.

*Langhorne & Miller*, for complainant.

*John L. Boone*, for respondents.

HAWLEY, J.   From the master's report it appears that on the 16th day of June, 1885, letters patent No. 320,285, for a gas-engine, were issued to Daniel S. Regan; that on the 29th day of December, 1885, another patent on gas-engines, No. 333,336, was issued to Regan and John H. Eichler jointly; that on the 14th day of May, 1886, Regan and Eichler assigned to W. T. Garrett all their right, title, and interest in said patents in the states of California, Oregon, and Nevada, and in the territories of Utah, Washington, Montana, Idaho, Arizona, and New Mexico; that this assignment (Exhibit D) was duly recorded in the United States patent-office on March 10, 1888; that on the same day Regan assigned to Garrett the same territory, in a pending application, all his right, title, and interest in and to said invention, for new and useful improvements in gas-engines, and the letters patent therefor when granted; that this assignment (Exhibit E) was executed and delivered to Garrett, but was not recorded; that on the 15th of May, 1886, an agreement (Exhibit F) was made, executed, and delivered by and between the said Regan and W. T. Garrett, which, after reciting the territory in which each are the owners, respectively, of inventions appertaining to improvements in gas-engines, reads as follows:

"And whereas, it is probable that one or the other or both of said parties may hereafter make other and further inventions and improvements in gas-engines, and in the mechanism by which they are operated; and whereas, the said parties desire to have all the benefits of all such inventions and improvements, each within his own territory, as hereinbefore described and specified: Now, therefore, in consideration of the premises and the mutual covenants and agreements herein made, we, the said William T. Garrett and Daniel S. Regan, do hereby license and grant and convey each to the other, within and

throughout all the states and territories owned by each, respectively, all such inventions and improvements, whether patented or not, which may be hereafter made by either of us; that is to say, that I, said Daniel S. Regan, do hereby license and convey to William T. Garrett the full and exclusive right to manufacture, use, and sell, within and throughout the states of California, Oregon, Nevada, and Colorado, and the territories of Utah, Washington, Montana, Idaho, Arizona, and New Mexico, all inventions and improvements, whether patented or not, which I may hereafter make in gas-engines, or in the processes or mechanism by which they are operated."

Then follows a like covenant from Garrett to Regan; that this agreement was never recorded; that the said Garrett on the 21st of December, 1889, sold and transferred all his right, title, and interest in and to the assignments and agreement above specified to M. M. Barrett, and the said Barrett, on the 2d of May, 1890, transferred his interests therein to the respondent; that on the 9th of August, 1889, Regan procured another patent on gas-engines, No 408,356, and assigned a half interest therein to one Sanford S. Bennett; that this assignment was duly recorded in the patent-office; that thereafter, on the 22d day of October, 1889, Regan and Bennett sold their right, title, and interest in said patent for the United States to complainant; that, it subsequently appearing that this patent was defective, the complainant surrendered it, and, under the laws of the United States, obtained a reissue, No. 11,068, dated April 1, 1890, in its own name. This suit is based on that reissued patent, and is for an infringement thereof. Respondents filed a plea in abatement to the suit, claiming that, by virtue of the several assignments above mentioned, they are the owners and holders of the title to the reissued patent in the states and territories named on the Pacific coast. This plea was referred to the master, and the case now comes before the court upon the exceptions of respondents to the master's report, finding that the plea is bad.

Some preliminary objections were urged by complainant to a consideration of this case, upon the ground that the exception taken by the respondents were insufficient to affect the master's report. It is enough to say, upon this point, that I consider the exceptions sufficient in this respect.

The conclusions upon which the report of the master is found may be briefly summarized as follows: (1) That Exhibit D is the only one of the documents offered by respondents which "has any relevancy to the issue submitted by the plea;" (2) that an invention not in existence, "but which may hereafter be devised,—a mere possibility,—having no tangibility or substance whatever, * * "* · cannot be the subject of a conveyance;" (3) that, if the agreement (Exhibit F) is in effect an agreement to convey, it was not made after the patent was issued, or after the invention was made, and hence the respondent has no equity, as against the complainant, who is "an innocent purchaser for value;" (4) that it appears from the instrument itself "that nothing more than a license was given or intended; that the words of conveyance used are 'license, grant, and convey,' and the right assigned is 'the full and exclusive right to manufacture, use, and sell'' within specified territory;"

that "these rights not being conveyed to Garrett and his assigns, and the right to license others to make and use not being specified or conveyed, the instrument can, at best, be regarded as nothing more that the grant of personal power to the licensee, which is not transferable by him to another." It is undoubtedly true that the assignment (Exhibit D) constitutes the basis upon which the entire transaction between the parties was founded; but it does not necessarily follow that it is the only document which has any relevancy to the issue submitted by the plea. The documents relate to each other, and refer to one general transaction. In Exhibit D reference is made to the privilege secured by the letters patent, "and the assignments thereof, and contracts concerning the same." What contracts? There were no contracts between the parties, as shown by the testimony, except as set forth in Exhibit F. A contract of some kind was within contemplation of the parties at the time of the execution of Exhibits D and E. The mere fact that Exhibit F was not executed until the next day does not, of itself, establish the fact that it was a separate and independent transaction. The fact of the assignments of the previous patents is recited in this agreement as a part of the consideration for its execution. It is apparent that the parties at the time had the entire transaction under consideration. The recitals in the respective instruments are of such a character as to authorize the court to treat the documents as having reference to one transaction, and they should be construed together. Exhibit F is not only a license, but an assignment, of the inventions or improvements of the invention that might thereafter be made, and patents obtained therefor. This is the conclusion reached by Mr. Justice SAWYER in the case of *Regan Vapor-Engine Co.* v. *Pacific Gas-Engine Co.*, (recently decided upon demurrer.)[1] It was said in *Littlefield* v. *Perry*, 21 Wall. 226, that "an assignment of an imperfect invention, with all improvements upon it the inventor may make, is equivalent in equity to an assignment of the perfected results." In construing the effect of the assignment in that case, which was in several respects similar to this, the court said:

"If the assignment, in precisely its present form, had been executed after the last reissue was granted, we think it would hardly be claimed that the legal title to all the present outstanding patents did not pass with it. What such an assignment could do in respect to legal titles this has done in respect to such as are equitable. The contest is now between an assignor in equity and his assignee. A court of equity will, in such a case, give the same effect to an equitable title that it would to one that was legal."

Although Exhibit F was not recorded, yet the reference made to "contracts concerning the same" in Exhibit D would seem to be sufficient to put any subsequent purchaser upon inquiry. But, in any event, the Regan Vapor-Engine Company does not own the patent for the whole of the United States. The prior assignment for the Pacific coast states and territories to the Pacific Gas-Engine Company conveyed an equitable interest in the patent. The subsequent assignment by Regan only conveyed "his right, title, and interest" in the patent, and his only interest was

[1]No opinion filed.

in and for the states and territories not included in his first assignment. The principles announced in *Turnbull* v. *Plow Co.*, 6 Biss. 225, are, in my judgment, applicable to the facts of this case. The court, in discussing the validity of the respective assignments in that case, said:

"The true construction of such an assignment is that, where there is a residuary interest left in the assignor under the patent within the territory mentioned, it must be construed as only conveying that residuary interest. I mean, of course, where he has previously parted with some interest under the patent in a portion of the territory. For example, in this case the patentee has conveyed all his interest in the patent in Henderson and Warren counties in 1860, but he had left and had a right to convey all his remaining interest in the state of Illinois; and when he stated that he conveyed all the interest which he had under the patent in the state of Illinois, and that the assignment was to vest in the assignee all his right under the patent in the state of Illinois, as fully and entirely as the same would have been held and enjoyed by him if the assignment had not been made, we must construe it as not indicating on his part an intention to convey what he had previously conveyed to other parties. * * * Where there has been a conveyance of property, which is unrecorded, and a conveyance afterwards of the grantor's rights and title in the same property, which is recorded, if there is anything upon which the second conveyance can operate it does not cut off the prior deed."

The same views were again declared in the same case in 9 Biss. 334, 14 Fed. Rep. 108, where the court said:

"Where there was a residuary interest left in the assignor under a patent, within the territory mentioned, the words, 'all the right, title, and interest' of the patentee, in the conveying clause of an assignment, are to be construed as conveying only such residuary interest, though the prior deed of assignment by which the patentee had alienated a part of his original interest in the territory had not been recorded when the later assignment was made."

For the reasons stated the exceptions to the master's report will be sustained.